IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**TASHIA GREENE, on behalf of
Patrick K. Young,**

    **Plaintiff,**

vs.                        Case No.  1:07cv227-MP/WCS

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

    **Defendant.**

                                  /

## REPORT AND RECOMMENDATION

      This is a child's application for supplemental security income social benefits. It has been referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

      Plaintiff, Patrick K. Young, a minor child, by Tashia Greene, was awarded child's supplemental security income benefits on June 1, 2000, based upon a diagnosis of Kawasaki's disease and juvenile rheumatoid arthritis. These conditions were found to

meet Listing 101.02.  R. 39.  On May 21, 2004, the Commissioner determined that Plaintiff's disability had ceased as of May 1, 2004.  R. 68.  After an administrative hearing,[1] the decision to discontinue benefits was affirmed by a decision by an Administrative Law Judge.  R. 15-25.  The Appeals Council considered additional evidence, but affirmed.  R. 4-7.  The appeal to this court followed.

Plaintiff contends that this decision is in error.  Plaintiff, however, cites only one portion of this record for this argument, the December 21, 2005, opinion of Melissa E. Elder, M.D.  Doc. 11, p. 11, citing R. 351.  On that date, Dr. Elder said that Plaintiff had "marked" restriction of the sixth domain of functioning, that is, in "health and physical well-being."  Plaintiff argues that the ALJ should have found that Plaintiff "meets or equals listing 114.09."  *Id.*

This contention is not persuasive.  Dr. Elder found that Plaintiff had no restrictions in the other five domains of functioning.  *Id.*  As will be explained ahead, it was necessary to show a "marked" restriction in *two* or more domains of functioning.

**Legal analysis**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d

---

[1] Plaintiff was 13 years of age at the administrative hearing, on October 3, 2006.  R. 377.

1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).

The Commissioner follows a three-step process to determine whether to discontinue childhood benefits that have previously been awarded. The steps, paraphrased from the regulation, are:

1.  Whether there has been medical improvement since the last favorable decision. If there has not been medical improvement, benefits continue.

2.  Whether the impairment still meets or equals the severity of the specific listed impairment that the impairment had been found to meet or equal before. If it does, benefits continue.

3.  Whether the child is currently disabled. To make that determination, the Commissioner follows the rules in 20 C.F.R. § 416.924(c) and (d) for making the *initial* determination of disability.

20 C.F.R. § 416.994a(b)(1)-(3).

An initial claim for child benefits is to be evaluated in three steps:

1.  Is the child currently engaged in substantial gainful activity?

2.  Does the child have any severe impairments?

3.  Does the child have any severe impairments that meet, are medically equal to, or functionally equal in severity to, an impairment listed in Appendix 1 of 20 C.F.R. Part 404?

20 C.F.R. §§ 416.924(a)-(d).

An initial claim is denied at step 2 if the child does not have a severe impairment. A "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations" is not a "severe impairment." 20 C.F.R. § 416.924(c).

At step 3 for an initial claim, the first issue is whether the impairment meets or equals a listed impairment is the same as for evaluation of an adult claim. If the impairment neither meets nor equals a listed impairment, the Commissioner must next determine whether the impairment is functionally equal in severity to a listed impairment. This step is unique to child supplemental security income disability claims.[2] Functional equivalency is defined as follows:

> If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that functionally equal the listings. By "functionally equal the listings," we mean that your impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in *two domains of functioning* or an "extreme" limitation in one domain, as explained in this section.

20 C.F.R. § 416.926a(a) (emphasis added). The domains are:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and,

6. Health and physical well-being.

20 C.F.R. § 926a(b)(1)(i) – (vi).

Following this sequence for evaluating whether benefits should terminate, Defendant correctly points out that at step 1 the ALJ determined that as of May 1, 2004,

---

[2] There is no "residual functional capacity" determination, and no determination of ability to perform work.

Plaintiff had demonstrated medical improvement since the last favorable decision. R. 18-19. Plaintiff does not contest this finding.

In any event, the finding of improvement is supported by substantial evidence in the record. On May 7, 2004, Dr. Sanders examined Plaintiff on a consultative basis. R. 330-331. He determined that while Plaintiff was initially thought to have Kawasaki disease, he now carries the diagnosis of juvenile rheumatoid arthritis. R. 330. Dr. Sanders said that Plaintiff's symptoms are primarily fever, joint pain, and a persistent headache at times. *Id.* Plaintiff was not having any eye problems. *Id.* Dr. Sanders said that "more recently he has been doing well." *Id.* Plaintiff complained of "some pretibial pain," but that, said Dr. Sanders, "might be more related to his playing soccer than to his Juvenile Rheumatoid Arthritis." *Id.* Dr. Sanders found "no joint pain, effusion, or swelling." *Id.* He concluded that Plaintiff "appears to have responded well to his current therapy." R. 331.

Dr. Elder, Plaintiff's treating physician, saw him on April 14, 2006. R. 344-345. Dr. Elder said that Plaintiff's condition was "very well controlled for [the] past two years." R. 344. His arthritis had been stable, though with increasing complaints of knee pain without "frank joint swelling or significant morning stiffness." *Id.* Plaintiff's school performance had "improved immensely." *Id.* Plaintiff complained of light sensitivity, but he was otherwise negative for fever, systemic rash, oral ulcers, nausea, vomiting, abdominal pain, morning stiffness, or muscle weakness. *Id.* No edema was noted in Plaintiff's extremities, and he had "full range of motion of all joints without arthritis." *Id.*

At step 2, the ALJ found that Plaintiff no longer met or equaled Listing 101.02, the listing that was the basis of the initial award of benefits. R. 19. Cited for this were

Dr. Elder's findings on April 14, 2006. Plaintiff does not contest this finding. Listing 101.02 provides:

> 101.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 101.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 101.00B2c.

Listing 101.02, found at Appendix 1, Subpart P, following 20 C.F.R. § 1599.

The issue contested by Plaintiff arises at step 3 for determining whether benefits should continue. As explained above, this analysis involves step 3 of the analysis for determining whether to award child benefits in the first place. The critical issue is whether Plaintiff has shown that he has a "marked" limitation in two or more domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

Dr. Elder found that Plaintiff had no limitations in the first five domains, and a marked limitation in the sixth, health and physical well-being. R. 351. Since two "marked" limitations are required, the ALJ's determination that Plaintiff's condition was not the functional equivalent of a listed impairment is supported by substantial evidence in the record. As a consequence, the single issue presented by Plaintiff is not persuasive and the decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to discontinue the award of supplemental security benefits to Plaintiff be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 5, 2008.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**